We will call our last case, you want to finish up or you want to take a break? I'm fine, go on. Okay, go on. Last case this morning, United States v. Dohou, number 19-1481, Mr. Sorenson and Ms. Leshefsky. Good morning. Good morning. Thank you, Your Honor, may it please the Court. My name is Quinn Sorenson and I represent the appellant in this case, Euphrem Dohou. I'd like to reserve three minutes for rebuttal if I may. Thank you very much, Your Honor. Subsection B-7 of Section 1252 of the Immigration Code expressly authorizes district courts to consider collateral challenge to removal orders and prosecutions for failure to depart under Section 1253 so long as the order of removal has not been previously, quote, judicially decided, end quote. The order underlying the prosecution in this case had not been judicially reviewed, had not been judicially decided, and yet the district court in this case rejected the request to entertain a challenge to the order on the basis that other provisions of Section 1252, including subsection A-2C and A-2C. A-2C is very broad, is it not? A-2C is broad in its coverage, yes, Your Honor, as are most of the jurisdiction-limiting provisions of Section 1252. But that does not mean that it excludes all challenges to a removal order, and that is clear from several decisions, some of which were cited in this Court's letter asking counsel to specify or to focus on particular decisions. One of those most specifically is INS v. St. Cyr. That was a decision issued in 2001 in which the Court addressed all of the jurisdictional-limiting provisions essentially under the then-existing statute, 1252. And it said that in this context judicial review has a very specific and limited meaning, and it said that judicial review means direct review of an order of removal for purpose of obtaining reversal or a reversal of that order or an order of the immigration authorities. It does not extend to collateral challenges. So it's a PFR, a habeas petition, something like that challenging that and not the criminal consequences that flow collateral. That's your position. That is my position, and I think that flows from St. Cyr and also what happened after St. Cyr. So St. Cyr basically said that the jurisdiction-stripping provisions of 1252 don't apply to habeas proceedings. Congress came in afterwards, amended the language to extend it to cover habeas challenges, direct habeas challenges to an order of removal, but it did not extend it to other sorts of collateral challenges, and that would include subsection B7, which, as this Court recognized in United States v. Charleswell, is a very different type of beast. It is not covered by the standard provisions of Section 1252A or B, and notwithstanding those jurisdictional provisions, the challenge to a collateral challenge in a criminal proceeding may still be brought, and that is a required reading under the statute for an additional reading, much beyond the interpretation of review, because if you were to read review to also encompass collateral challenges of this sort, then that would essentially read subsection B7, the collateral order, collateral challenge provision, out of the statute. Subsection A5, for example, states unambiguously that the sole and exclusive means for challenging and for seeking review of an order of removal shall be through a petition for review in the Courts of Appeals, and it goes on to state that the other jurisdictional limiting provisions, including A2C, shall be interpreted to bar any claim seeking, again, review of any order of removal, including in the habeas context. What's your response to the claim that Mr. Doe who didn't appeal to the BIA and didn't petition the Court of Appeals for review under 1252A? Well, I think there's a few responses, Your Honor. One is that the statute, that is, subsection B7, does not impose any such requirement on a defendant, on an alien in this particular circumstance. It says that a motion may be brought to challenge the validity of an underlying order of removal if the order of removal has been judicially decided. It does not say that the alien must prove that he was tempted to seek review or he was meaningfully precluded from seeking judicial review in a prior proceeding. And the reason that matters is doubly important, because that precise requirement exists for another collateral challenge proceeding. That is under section 1326D, which deals with illegal reentry prosecutions. 1326D2 provides quite unambiguously that in order to bring such a challenge, the alien must show that he or she was meaningfully precluded from seeking judicial review in a past proceeding. And that provision was enacted the exact same year as was 1252B7. But doesn't that just reinforce that if Congress did not put in a provision like that, like D2 for B7, that it did not intend them to go lockstep? And that was my point, so I apologize if I looked like I was going someplace else. No, that's exactly right, Your Honor. Since they adopted that provision, Congress adopted that requirement in subsection D of 1326, means that the exclusion of that language in 1252B7 means that they did not intend for that requirement to apply. But that comes in under 1326, that comes in on the back end, right? That goes to the scope of review when you get to have it. Here we're looking at what judicially decided means, and if someone has waived the right, had the opportunity to appeal, waived the right to appeal, why for these purposes should we interpret judicially decided not to be satisfied? Well, because judicially decided means exactly that to my mind. It means that there is actual decision by a court, and that's what the provisions of 1252 deal with. They deal with judicial review and judicial decision making, not with issues of waiver, not with issues of what happens when an alien does not bring a petition. Immigration judges are also judges, right? They are judges. And there's a distinction between there are officers of the immigration agency that can also make decisions separate and apart from review by an immigration judge, right? Yes, most definitely, Your Honor. But, again, we're talking about Section 1252, which deals with judicial review. It does not deal with administrative review. And the references to judicial review in that context, as INS v. St. Cyr confirms and in several provisions within other provisions within the statute, when we're talking about judicial review in that context, we're talking about review by a federal court. And approval by a federal court. And to be decided by a federal court means that a federal court must actually adjudicate the matter. And there is further support for this beyond merely the absence of language that otherwise appears in 1326D. Because that language is quite specific. As a prerequisite to giving relief under 1326D, Congress said the alien must show that they sought judicial review and was precluded from getting it. That language was absent and was not included in Section 1252B7. And there's got to be a reason for that. And the reason is that Congress wanted these to be decided only if the order was judicially decided. That's the only circumstance in which an alien is precluded from challenging it. And further support for this is that the actual language of Subsection B7 is not a recent development in the Immigration Code. It was originally enacted in 1952, along with the original enactment of the entire modern Immigration Code. And at that point, there were no such real limitations, no such exhaustion restrictions, no limitations on you must seek review in the Court of Appeals before you proceed elsewhere. At that point in time, it was quite common for district courts to consider these types of issues. So there's no reason to assume that Congress would have imported that type of requirement at that time. And then when Congress reenacted the provision, placed it into where it stands now, 1252B7, at that point in time, Congress kept the language as it was, only a requirement of judicially decided, not one that you had to seek judicial review previously. And again, if you were to interpret the language otherwise, if you were to interpret the review provision or the jurisdictional limiting provisions of A2C of A5 as limiting B7 review, then it would mean that no challenge under B7 could ever be brought. Because again, the language of A5, for instance, is so broad as to exclude any challenge if review is to include collateral challenges. And as a final matter, if there was further any question over this issue, there is the doctrine of constitutional avoidance. If we are to limit and preclude an alien from seeking to bring a challenge in a criminal case, that implicates the very constitutional due process concerns that were addressed in United States v. Mendoza-Lopez. I don't know if you have more you want to say on this point, but if not, I was hoping I could hear a little bit about the ineffective assistance of counsel. I'm happy to, sir. Let's assume we remanded. What standard should the district court apply? And do you think the 1326D factors apply? Or even if they don't, you know, how does Lozada's prejudice play out for you? If you could talk about those two distinct. Certainly, Your Honor. Thank you. The 1326D factors I do not think apply. As I've said before, I think we are talking about two different animals. The 1326D factors you see there are really drawn from Mendoza-Lopez, which really recognized that this was a due process claim in that circumstance. That was before the statute even allowed for a challenge in an illegal reentry context. And this was developed as a matter of due process. So those limitations reflect due process requirements to actually even get review in the first instance. That is not applicable in the B7 context because what we're talking here is just a creation of Congress itself. Congress granted an opportunity for review in this particular circumstance. And to get to your underlying question, then what is the standard to be applied? Well, the B7 does not itself state a generally applicable standard, but I think in this circumstance the statute is best read as directing and requiring the district court to apply essentially the same standards that would be applied by a circuit court, this court, on a petition for review of the order of removal. And I say that for a few reasons. One is that nothing in the statute, nothing in 1252, is inconsistent or suggests that another standard should apply. And, in fact, there is every reason to think that those standards should apply because basically they apply in the same provision. B7 applies in subsection B. And they review provisions that generally apply in this circumstance apply in B4. So the mere proximity of those provisions suggests maybe those standards should apply. Second, if you look at subsection B7B, Congress did actually specify a standard review for one particular type of claim, and that's a nationality claim. Nationality claims are generally subject to a bit of a different, a distinct standard review on a petition for review. And in B7B, Congress in this case said if a challenge has brought a collateral challenge under B7, the same standard should apply on nationality claims. But let me ask you, in connection with the, if we were to remand on the merits of one of the arguments, in addition to ineffective assistance of counsel, was that notice to appear was somehow invalid, doesn't our case in the Como take that off the table? I think I would concede that for these purposes, Your Honor. I think if we were going to go back, I would, and I'm not sure what would happen, but for these purposes I would concede that the ineffectiveness claim is really what we're talking about. If we go back to, you've answered the first part of it. My second part was, let's assume those factors don't apply. Can you clear Lozada's prejudice requirement on remand? I believe so, Your Honor. I think we had, and there was three separate aspects to the ineffectiveness claim, actually, that was going to be brought before, below, that wasn't actually addressed, of course. And the three aspects, this was a convention against torture claim, in which the alien, the defendant, in this case Mr. Dohu, was claiming that if he was returned to Benin, he would face torture, and that would be subject to the, at the acquiescence or with the approval of the government. So there were three aspects to the claim. One was that his attorney in the initial proceeding did not, failed fundamentally to present evidence of acquiescence, if I may continue. Failed fundamentally to present expert, expert of evidence of acquiescence. Two, failed to present evidence of Mr. Dohu's very serious medical condition, his heart arrhythmia, which really required treatment and could be relevant in terms of his treatment back at home. And three, and I think this is most to your point, perhaps, Your Honor, is that there was a third aspect to the claim, which is Mr. Dohu's attorney improperly advised him on his right to appeal or whether he should waive his right to appeal. And, in fact, the allegation was that Mr. Dohu was, in fact, advised improperly to waive his right to appeal. And that is why he was precluded thereafter from seeking review in the court of appeals. And that gets back to some of the original questions, where even if you do import, improperly in my mind, if you import a requirement that there must be some meaningful preclusion of the right to seek judicial review previously, that exists here at least on a prima facie matter. So we have that as a factual matter. So I think we do get, and that would clearly establish prejudice for these purposes in terms of rendering the whole proceeding fundamentally unfair within the meaning that has been adopted by this court and others in terms of assessing these claims. And I think one more point to, if I may, I'm sorry. If I may, one more point on the standard of review section. Oh, sorry about that. No problem. Finish that one point. On the standard of review, one final point. B7D states that during the pendency of a criminal proceeding, no petition for review may be filed. And that makes sense if Congress expected that the district court would be applying. It would indicate that they're separate concepts. I'm sorry? It would indicate that those are separate concepts. Well, I think what it indicates actually is that Congress expected the district court to apply the same standards of review that the court of appeals would, because in that context, you don't want two courts at the same time applying the same standard of review to the same order of removal and having potentially different results. What Congress would have wanted in that circumstance is the district court to decide on the general standards and then the court of appeals to handle it on appeal. Thank you.  Ms. Olszewski? Good morning, Your Honors. My name is Michelle Olszewski, and I represent the United States of America in this matter. Your Honors, the district court in this case followed the plain language of the statute and correctly found that it did not have jurisdiction at the district court level to entertain a challenge. It looks like that your interpretation of 1252A2C, I think, raises due process concerns under Mendoza-Lopez, doesn't it? In our view, it does not, Your Honor. The law is clear. But if counsel was ineffective and that prevents him from obtaining judicial review, doesn't Mendoza-Lopez require that the alien be able to challenge the removal order in the criminal proceeding? Well, Your Honor, Mendoza-Lopez, which was codified specifically at 1326D, the court specifically said the ruling that we make today only applies to 1326 illegal reentry violations, the ability to collaterally attack an underlying deportation order. That's not what we have here. What we have here is a clear congressional intent to treat a certain class of aliens in a certain way. That's just to say that the court was limiting its decision to the issue before it, as one might expect. But why does it distinguish or foreclose its application here where there seems to be an analogy on the due process side, the requirement that there be some opportunity to have either at least meaningfully waive the right to appeal, for that to be voluntary, or to be able to challenge it in the context of a criminal proceeding before one is tried on criminal charges? What I would say to that, Your Honor, is that Congress has unequivocally and unambiguously indicated that this is your route. If you are in this certain class of aliens that have committed aggravated felonies, this is the route that this law provides for you to appeal an immigration judge's decision. You can take that decision to the Board of Immigration Appeals and to the Court of Appeals, specifically skipping over a district court. There is a specific intent in the way the law is written. In this case, Mr. Dohu had a private attorney at his hearing. There's no indication other than perhaps now Mr. Dohu can say I was unlawfully advised to waive my right of appeal, but it wasn't just that he didn't avail himself of the routes of appeal that he had. He affirmatively waived that right to appeal with an attorney at his side. At that point, that A2C, the class that he falls into, prohibits him from being part of the purview of B7, we don't even look at these nine provisions under B7 because B, the requirements for review, clearly says with respect to review of an order of removal under subsection A1. And Mr. Dohu does not fall under subsection A1. He falls under subsection A2 because Congress has specifically indicated that once you have committed these aggravated felonies, this is where you fall. And so he doesn't even fall under the ambit of B7. I had a motion to B7. How is that a form of, quote, judicial review, close quote, under 1252A? Your Honor, Mr. Dohu waived his right to judicial review, and the only reference that I can make would be this court's decision in Charles Well, where the part that the government agrees with in that decision is when that court looked at a 1991 deportation order in the context of a 1326 illegal reentry. They looked at the 1991 underlying deportation order and said he doesn't fall under Mendoza-Lopez because he had the opportunity for judicial review. He did not avail himself. Doesn't footnote 4 in Charles Well say that if another jurisdiction stripping provision is in the INA, reaches, quote, reach the collateral challenges to a criminal charge, close quote, that would give rise to, quote, serious constitutional concerns, close quote? And, Your Honor, I also believe that that has been considered in this statute as promulgated by Congress because B-7 specifically addresses a 1253 violation, and that would be a collateral attack for those individuals facing a 1253 hindering removal violation because there are a myriad of reasons for removal. But the reason for Mr. Dohu's removal is pivotal in this case because he committed an aggravated felony. Therefore, he falls under A2C. Congress kind of provided a collateral attack for others who are facing removal for other reasons other than having been an aggravated felon. So in the government's view, the district court got it right. A2C prohibits or removes a jurisdiction from the district court at that level because of the reason for the removal, which is that he committed an aggravated felon. We don't even get to B-7 because he doesn't fall under that section. That would be the government's view, and the district court kind of hit the nail on the head with its decision in bringing it to the attention of the parties, and quite honestly, the parties did not even bring that to the attention of the court. You know, when you read the putt of another court, why is the Ninth Circuit's decision in Archie Hernandez pretty instructive, just a way to go? Well, I would disagree with that, Your Honor, because Arch Hernandez… Dealt with illegal reentry, but this is the same thing as a failure to part. I don't see much of a distinction making a difference. Well, it dealt with an illegal reentry, and it also relied on… I believe it relied on Seventh Circuit cases in reaching its decision, and those Seventh Circuit cases were ultimately abrogated in the Seventh Circuit, thereby kind of casting doubt on the whole decision of the Ninth Circuit. I know that Arch Hernandez was… I don't think the Ninth Circuit's reversed itself, and they go and bank a lot. Excuse me, Your Honor? I don't think the Ninth Circuit has reversed itself, and they go and bank a lot, probably more than any other circuit. It has not, but I believe that the… I don't believe it's… The decision in that case applies to the facts in this case. Your Honor, it's a Ninth Circuit decision that… I understand it's a Ninth Circuit decision, and I understand it deals with illegal reentry, but I don't see much of a difference between illegal… I think the concepts and the analysis are much the same, and the question is what in that case do you disagree with if we were to use it as a template for considering the issues here? Well, I would argue that it's a Ninth Circuit decision and not presidential in this case. I got it. I got it. And I would argue that it's involved in illegal reentry, and I believe that Congress has responded to that in actually codifying a collateral challenge for 1326, the ability to attack an underlying deportation order in that context of illegal reentry, but that's respectfully not what we're dealing with here. We have a clear congressional intent on how the courts and the… is if a removal order is invalid by virtue, in this case, of the person being a victim of ineffective assistance of counsel, can that serve as the basis for the crime of failing to depart? In other words, if the underlying basis doesn't exist, if somehow it's called into question, how can you then say you failed to depart when in fact the order that you failed that was entered causing you to depart turns out to be perhaps a nullity? Well, in the context of illegal reentry, an alien would have the opportunity to avail himself of a petition to reopen or a petition to withhold, which would have been an opportunity for Mr. Doe, who had he availed himself of that opportunity, he could have gone to the Board of Immigration Appeals. And I'm not quite sure that the attack on this final order is on the validity of the order so much as it is we kind of want to go back and redo because my attorney did this, this, and this. If there was, that's obviously not before it, if there were to be ineffective assistance of counsel found and the removal order was in effect erased and you have to go back to whatever you have to do in order to resurrect it if you can, then isn't the basis for the failure to depart missing? In other words, one has to lead to the other. It does. And in the context of proceeding into a criminal violation, having a final order of removal, which is what the statute requires, which is what we had in this case, a final order of removal. But if that final order of removal is taken off because of ineffective assistance of counsel, where does that leave you? Well, the point is Mr. Doe, who had the ability to attack the immigration judge's decision on just that, Your Honor, he could have gone to the Board of Immigration Appeals. He didn't know at that time necessarily this counsel was ineffective. I mean, again, we're all conjecturing as to whether counsel will be found ineffective. So I understand that. But if the counsel was ineffective and didn't advise him properly, and Lozada and all the things that are required by the BIA were complied with, then where does that leave you in connection with the failure to depart conviction? Well, in terms of the criminal conviction in this case, I think it – I'm just talking logic here. I would disagree that the United States proceeded on an invalid final order of removal in the criminal prosecution. I believe that Mr. Doe, who still would have if he were still in this country, however, he's been removed from the country, and perhaps at this point would be time barred from motioning to reopen, but post-conviction there could be routes to go back to the immigration court. My question to you is assume that all of those issues are not before us and that assume that ineffective assistance of counsel claim is made and it is successful. What happens to the criminal conviction for failure to depart? I believe it would have to go – a motion to dismiss the indictment back to the – That's the only thing I can conceive of. But, Your Honor, what I would say to that is that Mr. Doe, who because of the reason for his removal, as articulated clearly by Congress, had a route promulgated for him because of the aggravated felony conviction, and with an attorney at his side, he affirmatively waived the right to appeal. But it's not enough to have an attorney at your side, right? It has to be effective assistance of counsel. That's correct. And his challenge is that he didn't have effective assistance of counsel. Hence, his appeal was not knowing involuntary. His waiver of appeal was not knowing involuntary. Well, I would respectfully disagree with that, Your Honor. That's his claim. That is his claim, but he's making the claim in the wrong court at the wrong time using the wrong law. That would be the government's position because the statute clearly provided him with a route to pursue to make that claim. But no judge has made a decision about the validity of the order. It never got to that point on review, and his argument is it never got to that point on review because of a constitutional violation earlier in the process that prevented it from getting to that point of review. And isn't that where Mendoza-Lopez firmly applies? I believe Mendoza-Lopez, as codified at 1326D, refers to unlawful reentry and not to a specified, a congressional-specified class of criminal aliens who Congress has specifically promulgated a route for them to follow if they feel aggrieved, if they feel that they have been afforded less than effective counsel at the immigration judge level. Mr. Dovo could have, as this process was playing out, before a final order became a final order. He had time periods within which he could have raised that. There's an analog here. Sometimes someone gets a conviction and didn't have counsel or had counsel that didn't meet any kind of constitutional standard. Say there wasn't an appointment of counsel and the sentence was such that there was a right to appointment of counsel. And then that conviction is used to enhance someone's sentence later. The Supreme Court's dictates say, you know, it's not that you have to go back and file a habeas petition in the original one. You can attack in your current criminal case the use of an uncounseled prior conviction to enhance your sentence. Isn't that the analog here that due process Sixth Amendment concerns drive recognizing that the forum you litigate this in is the sentencing in the current case? Is the only thing that you think makes this different, the existence of this statute on the books that you think is supposed to be channeling it back? Because, again, that's a situation where you're doing it later based on the conviction that, in theory, you could have raised this claim earlier on. But we recognize we can't predicate a sentence enhancement later based on that. I do believe that the Congress specifically intended to treat this class of aliens differently and to, if you will, streamline the process. There's a reason why, I mean, this law as the laws go is pretty clear in terms of indicating that A2C are matters not subject to judicial review. You're just resting on the text here. You don't have some functional difference between the two proceedings. Well, I think I am, Your Honor, because I think the text is unambiguous. A2C is clear, as is B7 with the initial sentence indicating that this section applies to A1 final orders. That's not the case here. This is Mr. Doe who falls in A2, A2C specifically, because he committed an aggravated felony. I've got that. I know we're past time, but I do hope you can talk a little bit about, assume we find there's jurisdiction here and we're going to be sending this back on ineffective assistance, you know, on a challenge. What standard should we apply? Your friend on the other side says the 1326D requirements should not apply. Do you argue that they should, and if so, why? How would we apply that on Lozada? I believe that in the case that Your Honor has asked us to consider the standards from the Eighth Circuit, the standard that was applied was under 1326D, which was a due process standard involving a process that was so fundamentally unfair and the additional element of prejudice such that the outcome would have been different. I believe that if this case were to be sent back, the question would be ineffective assistance of counsel, and the district court would most likely be required to address that issue in a similar fashion, that the process was so procedurally flawed such that there was prejudice, and because of that prejudice, the outcome would have been different. But I will say that Mr. Doe, who had a full hearing in front of the immigration judge, where he testified, witnesses testified, and he was represented by private counsel, and again, under the rules that were promulgated by Congress, he waived his right to follow his avenues for relief as Congress set forth for that particular class of aliens. So what is key here is the reason for the removal. Thank you, Your Honors. Thank you, Your Honor. I think there are two broad points I'd like to point out, because I think there may be a lack of clarity coming from the other presentation of my colleague. One is that there was clearly jurisdiction at the initial stage over this case. That is under 1832-31, which grants district courts jurisdiction over offenses against the laws of the United States and all claims and defenses arising there under. So there was jurisdiction to start out with. There was also authority under subsection B-7 to file a motion to challenge the removal order in this case. There is no doubt about that. It refers to any criminal proceeding charging a violation of 1253-A. That is what this was. Therefore, the statute will authorize it. The only question there, then, is whether we can find a provision that explicitly takes jurisdiction away from the criminal court in this particular context. And I did not hear any argument on the other side explaining why review as used in A-2C, as used in A-5, as used in any provision in 1252 should be interpreted to actually have that extraordinary result. And it would be an extraordinary result for at least three reasons. One, all of the provisions of 1252 were enacted at the same time in 1996 as part of ARERA. So it would be quite amazing if at the one stage Congress granted with one hand in B-7 and said, thou shalt have authority to do so, to consider these challenges, and yet with the other hand, using language that doesn't clearly apply, takes it away. That would be an extraordinary result. Second, to hold that would actually be to go contrary, I think, to Mendoza-Lopez and to Charleswell. Mendoza-Lopez actually does make reference to this particular exemption. It makes reference, before getting into the 1326 issues, to 1105A, which is where the language of 1252B-7 used to appear. And Mendoza-Lopez explains that that is an exception to the general rule, that courts of appeals are the only forum for holding these because this collateral challenge is not a petition for review. Charleswell says the same thing and refers explicitly back to 1252. And finally, again, as a constitutional matter, as this Court has already recognized, I think, if you are going to bar any defendant, whether a criminal defendant, whether otherwise, from seeking any review, that is a due process problem. Mendoza-Lopez did not make any distinction among individual defendants based on their crime, and none can be drawn. And finally, to the extent that there is any question, and I believe there are some answers by the Court that made this clear, we are not talking about the merits issue at this point in time. What we have to accept is that this challenge was one to the validity of the order of removal, which it clearly was, and if it was a challenge that can be cognizable under B-7, which I think it clearly satisfied, then the district court had jurisdiction and it had the obligation to consider it, and the case should be remanded with the judgment of conviction reversed and vacated for further proceedings. Thank you very much. Thank you to both counsels for being with us today. Much appreciated. We'll take the matter under advisement and adjourn.